[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff's, Louise Grabowski and Mary Mikulak, own separate residences that adjoin City of Bristol's Peck Park. They allege, in four CT Page 10679 counts, to suffer now and in the past, irreparable harm resulting from actions by the defendants in carrying out the terms set out in the will of Constant Y. Peck; that the designation and location of Peck Park were not in conformity with the purpose and intent of his will. Further, that use of the park by the defendant, Forestville Little League (F.L.L.) was violative of the terms of the will, as well as of the common law use to which a public park is permitted.
The plaintiff's seek to restrain the defendants from continuing violating the terms of the will of Constant Y. Peck and from maintaining a nuisance within Peck Park. Additionally, the plaintiff's seek to have actions by the Bristol Board of Park Commissioners relating to Peck Park declared void.
The defendants herein are the City of Bristol, as the responsible entity for actions taken by its various commissions, departments and employees; the Forestville Little League; and, Fleet Bank, N.A., successor co-trustee under the will of Constant Y. Peck.
The pertinent factual background for this action follows:
The will of Constant Y. Peck set out conditions and financing for a proposed public park within the City of Bristol to honor the memory of Burdette Abel Peck and Elizabeth Terry Peck.
The Bristol Probate Court determined that the terms and conditions set out in the will of Constant Y. Peck had occurred or had been met, including the approval by appropriate City bodies, together with its plans and proposals for carrying out the wishes set out in the will of Constant Y. Peck. Thereupon, the court approved the City's plans and proposals for implementing the Constant Y. Peck's proposed park in memory of Burdette Abel Peck and Elizabeth Terry Peck. Additionally, the Probate Court approved financial arrangements to carry out those plans. To carry out these financial arrangements, the defendant, Fleet Bank, became a successor trustee.
As a part of the uses to which the Peck Park would be put, the defendant, Forestville Little League, was authorized to install a baseball diamond which it could use for its games. However, the defendant, City of Bristol, through its Park Department retained control over the field as well as over the complete park.
All of the above items were carried out: the Peck Park was located on former School Board property after being transferred to the City of Bristol's Park Department. This parcel adjoined another parcel of City property. A chain link fence was installed to separate the two parcels, CT Page 10680 and an identifying marker noting the Peck Park was installed at an entrance to the park. Subsequently, a Little League baseball diamond was constructed as a joint effort of the F.L.L. and the Park Department. This required removal of the trees and brush covering the field. Landfill and loam were used to landscape the area suitable for a playing field. The perimeter area of the park was enclosed by a chain link fence, and in the sections adjoining homes, including those of the plaintiff's, trees formed a sound and sight buffer of the park activities.
The park use by the F.L.L. begins each year about April and ends at the latest in October. When games are played, spectators are permitted. These usually are family members of the Little League players. They can be noisy and on occasion a ball may be hit so hard that it may penetrate the buffer of trees and go over the fence into one of the neighborhood yards.
Some automobile parking is available on the park premises as well as on adjoining streets. At times, neighborhood driveways have been blocked. But for the most part, the police have been quickly responsive to complaints when this occurred.
On adjoining City property, the Little League has three additional ball diamonds. These contribute to the parking problem on the streets. They are, however, not involved in this action except to the extent that on occasion spectators at those games may park their cars on premises of the Peck Park.
The plaintiffs' complaints that the location of Peck Park abutting other park property violates the conditions and intent of the said will in that it could be absorbed into the larger park property which contains three Little League diamonds. However, the defendant City is aware of these restrictions and has provided for the complete separation of the two properties by installing a chain link fence between them and placing an identifying marker at an entrance to the Peck Park. In addition, and most importantly, the financial benefits obtainable by Peck Park under the will are controlled by co-trustees who are responsible to the Probate Court and not to the City of Bristol. Thus, the possibility of Peck Park merging with the adjoining property is slight and therefore does not violate the terms set out in the will.
The plaintiff's also contend that at the time the Board of Park Commissioners were considering the Little League's request to use Peck Park for Little League games, a member of the Board of Park Commissioners; i.e., Morris Laviero, voted in favor of permitting the Little League to participating in the use of Peck Park by constructing a ball diamond when he knew that a fence would also be constructed around CT Page 10681 the field; that his family was in the fencing business and might be interested in installing the fence. Thus, he had a personal or financial interest in the outcome of the vote and should not have participated in it.
However, no evidence was produced as to whether the fencing was put out to bid, and if so, whether the low bidder received the bid; whether in fact payment was made for the fence installation and, if so, by whom. Thus, no evidence was presented to show that Morris or his family received any financial benefit from the installation of the fence.
The plaintiff's also contend that the Little League field construction required the removal of numerous trees from the site, and that in the construction process inappropriate and odoriferous soil was used creating a nuisance, as well as presenting a danger of contamination of ground water that feeds the neighborhoods' well water supplies.
Regarding the removal of the trees for the construction of the ball field, nothing in the will's terms forbade such removal to accommodate recreational activities.
As to the condition of the earth used to construct the ball field, no evidence was presented indicating that there was any resulting danger to the underground water supply, nor has there been any evidence produced of adverse effects on the neighboring well water.
The plaintiff's further raise objections to the noise and adverse conditions that occur during the course of the ball games.
It is true that large groups of children at play, even though the play is organized and regulated, can create objectionable noise levels to surrounding areas such as those existing here. However, similar situations are created by any human activity: traffic on streets, commercial or manufacturing activities, schools and playgrounds are all sources of noise and sometime even danger to people in their vicinity. These are necessary resulting adverse effects from such human activities that society has agreed to accept in exchange for the benefits that accrue from those activities. It is an accepted component of our society that recreational activities by members of society, especially by children, is a necessary and important element of society and should be advanced for the betterment of society.
The court finds that this policy is applicable to the present situation, subject however to reasonable limitations as to those activities that adversely impact other members of society. CT Page 10682
In the present action, the plaintiff's contend that they are such adversely affected members of society primarily because of the close proximity of the Little League's activities to the plaintiffs' residences.
The court finds that the activities of the defendants are not so unreasonable and occurring at such times as to so impact the plaintiffs' lifestyle that the defendants should be enjoined from continuing the Little League activities on its Peck Park diamond.
The Little League's activities are sufficiently away from the plaintiffs' residences, together with the fence and buffer zone of trees, that there is no undue or unreasonable adverse impact on the plaintiffs' use and occupancy of their individual premises.
Therefore, the court finds for all the defendants on all counts of the plaintiffs' amended complaint.
Judgment may enter for the defendants on all counts of the complaint together with court costs.
Kremski, J.T.R.